

EOD
10/05/2005

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DAVID WAYNE WILSON and | § | Case No.  05-61352 |
| CARRIE LYNN WILSON | § | |
| | § | |
| Debtors | § | Chapter 7 |

## MEMORANDUM OF DECISION[1]

This matter is before the Court upon hearing of the "Objection of Billie Claude Aydelott and Shannon R. Aydelott to Debtors' Claim of Exemptions" filed on August 29, 2005, in the above-referenced case.  The objection sought to invalidate the homestead exemption claimed by the Debtors, David W. and Carrie Lynn Wilson, as to certain real property identified on the Debtors' Schedule C as "21737 CR 2160, Troup, Texas, 10.25 rural acres described in the Contract for Sale filed in Volume 2307, Page 664 of the land records of Smith County, Texas" (hereafter, the "Subject Property").  A hearing was held upon this matter on October 4, 2005, and upon the conclusion of such hearing, the Court took the matter under advisement.  Upon due consideration of the evidence and upon research and review of the applicable legal authorities, the Court concludes that the Objection of Billie Claude Aydelott and Shannon R. Aydelott to Debtors' Claim of

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

Exemptions should be sustained.[2]

*Factual and Procedural Background*

The Aydelotts purchased the Subject Property comprised of 10.25 acres of real property near the city of Troup from the Debtor, David W. Wilson, pursuant to a contract for deed in 1998. The Aydelotts paid $1,500 down, with monthly payments to follow. Upon the purchase, the Aydelotts moved a mobile home onto the Subject Property and have lived there in constant occupancy of the premises since 1998. The Property has constituted the Aydelotts' homestead since 1998.

After an attempt by the Debtor to cancel the contract for deed and to evict them from the Subject Property in the fall of 2002, the Aydelotts initiated litigation in the Smith County Court at Law regarding the attempted eviction and for damages for alleged violations by the Debtor of his statutory duties under applicable sections of the Texas Property Code. On May 16, 2003, a judgment was rendered in favor of the Aydelotts, and against the Debtor in the approximate amount of $98,800. The judgment also declared that the contract for deed between the parties had not been terminated or canceled by the Debtor; was "still in effect and enforceable;" and that the Aydelotts had not committed any violations of the contract with the Debtor. No appeal of that judgment was pursued by the Debtor and the judgment was abstracted in Smith County on April 5, 2004.

---

[2] This Court has jurisdiction to consider the objections pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (B), and (O).

The circumstances regarding the payment of property taxes is a bit clouded. The property is apparently assessed in the names of both the Aydelotts and the Debtor and is assessed both in Smith County & Cherokee County. Mr. Aydelott testified that he had paid every tax assessment which he has actually received and, despite the assertions of Debtors' counsel, there is no competent evidence that the Aydelotts are in default under the contract at the present time.

The Debtors claimed the Subject Property as an exempt homestead under Schedule C filed with this Court to which the Aydelotts have timely objected. The objection claims that the Subject Property is not the homestead of the Debtors and that the Debtors have been ineligible to claim the Subject Property as their homestead under Texas law since 1998. The Debtors offered no evidence in support of their response to the exemption objection.

*Discussion*

The commencement of a bankruptcy case creates an estate encompassing all legal and equitable interests in property of the debtor as of the petition date, including any property that might potentially be exempt. 11 U.S.C. §541(a). The debtor may then exempt certain property from the bankruptcy estate by claiming either the federal exemptions provided by §522(d), or any other exemptions provided by applicable federal, state, or local law. 11 U.S.C. §522(b). In assessing a debtor's claimed exemptions, the court must look to state law to interpret the state exemption rights. *Bradley v. Pacific*

*Southwest Bank (In re Bradley)*, 121 B.R. 306, 312 (Bankr. N.D. Tex. 1990), *rev'd on other grounds*, *In re Bradley*, 960 F.2d 502 (5th Cir. 1992); *see also In re Moody,* 77 B.R. 580, 590 (S.D. Tex. 1987) ["Bankruptcy courts must resort to state law for an interpretation of state exemption rights in homesteads."], *aff'd by Matter of Moody*, 862 F.2d 1194 (5th Cir.).  The facts and law existing as of the date of the petition govern a debtor's claimed exemptions.  *Zibman v. Tow*, 268 F.3d 298, 302 (5th Cir. 2001) ["This focus on the status as of the date of filing is commonly referred to as the 'snapshot' approach to determining the extent of the bankruptcy estate and the scope of the exemptions."] (*citing White v. Stump*, 266 U.S. 310, 312, 45 S.Ct. 103, 69 L.Ed. 301 (1924) ["(The Bankruptcy Code) makes the state laws existing when the petition is filed the measure of the right to exemptions."]; *Hrncirik v. Farmers Nat'l Bank (In re Hrncirik),* 138 B.R. 835, 839 (Bankr. N.D. Tex. 1992) [stating that exemptions are determined as of the date of the filing of the bankruptcy petition].

Because the Debtors in this case selected the Texas state law exemptions, the Court must look to Texas law existing as of the June 29, 2005, petition date.  The Texas Constitution, both now and on the petition date, states that:

> The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or contiguous lots amounting to not more than 10 acres of land, together with any improvements on the land; provided, that the homestead in a city, town or village shall be used for the purposes of a

home, or as both an urban home and a place to exercise a calling or business, of the homestead claimant, whether a single adult person, or the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired; provided further that a release or refinance of an existing lien against a homestead as to a part of the homestead does not create an additional burden on the part of the homestead property that is unreleased or subject to the refinance, and a new lien is not invalid only for that reason.[3]

Similarly, the Texas Property Code states as follows:

(a) If used for the purposes of an urban home or as both an urban home and a place to exercise a calling or business, the homestead of a family or a single, adult person, not otherwise entitled to a homestead, shall consist of not more than 10 acres of land which may be in one or more contiguous lots, together with any improvements thereon.

(b) If used for the purposes of a rural home, the homestead shall consist of:
    (1) for a family, not more than 200 acres, which may be in one or more parcels, with the improvements thereon; or
    (2) for a single, adult person, not otherwise entitled to a homestead, not more than 100 acres, which may be in one or more parcels, with the improvements thereon.[4]

---

[3] *See* TEX. CONST. art. XVI, §51 (amended 1999); *see also England v. FDIC*, 975 F.2d 1168, 1172 (5th Cir. 1992) ["From the beginning of Texas' statehood in 1845, its constitutions have provided homestead protection to its residents. . . ."].

[4] TEX. PROP. CODE ANN. §41.002(a), (b) (Vernon 2000).

This exemption protects a debtor's homestead from seizure for the claims of creditors, except for encumbrances which are "properly fixed" on the homestead property.[5] Section 41.001(b) then proceeds to describe those encumbrances which may be "properly fixed on homestead property." *See* TEX. PROP. CODE ANN. §41.001(b).

Although the party objecting to the homestead exemption has the ultimate burden of persuasion (or the risk of non-persuasion) pursuant to FED. R. BANKR. P. 4003(c), the debtor-claimant must sustain an initial burden of production or going forward with the evidence to establish that the referenced property qualifies for the exemption claimed before the objecting party is obligated to go forward with his proof. This is consistent with Texas law in this area which requires any homestead claimant to prove that the property claimed as homestead actually qualifies for the homestead exemption. *See, e.g., Perry v. Dearing (In re Perry),* 345 F.3d 303, 311 (5th Cir. 2003) ["The claimant has the initial burden of establishing homestead status."] (*citing Burk Royalty Co. v. Riley,* 475 S.W.2d 566, 568 (Tex. 1972)); *Bradley v. Pac. Southwest Bank (In re Bradley),* 960 F.2d 502, 507 (5th Cir. 1992) ["It is well settled in Texas that an individual who seeks homestead protection has the initial burden to establish the homestead character of her property."] (*citing Lifemark Corp. v. Merritt,* 655 S.W.2d 310, 314 (Tex. App. — Houston [14th Dist.] 1983, writ ref'd n.r.e.)); *Vaughn v. Vaughn*, 279 S.W.2d 427, 436

---

[5] TEX. PROP. CODE ANN. §41.001(a) states that "[a] homestead . . . [is] exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property."

(Tex. Civ. App. — Texarkana 1955, writ ref'd n.r.e.) and cases cited therein.[6]

The Debtors wholly failed to present any competent evidence to demonstrate that they ever possessed cognizable homestead rights in the Subject Property. While the Debtors' counsel made certain arguments referencing the principle that Texas law does recognize the acquisition of a homestead rights where a stated intention to occupy a property as a homestead was accompanied by overt acts towards occupation, there is no evidence of the Debtors' intention regarding any homestead interest in the record (other than the Schedule C claim itself), nor is there any actual evidence of any overt acts by the Debtors to acquire a homestead interest in the Subject Property.[7] Therefore, the Court concludes that the Debtors have failed to sustain their initial burden of production to demonstrate that the Subject Property qualifies for a homestead exemption under Texas law and concludes that Aydelotts' exemption objection must therefore be sustained.

This memorandum of decision constitutes the Court's findings of fact and

---

[6] Generally, in order to assert homestead rights in a particular property, a person must use the property as a home. TEX. CONST. art. XVI, §51 (amended 1999); TEX. PROP. CODE ANN. §41.002(a), (b) (Vernon 2000). *See also Claflin*, 761 F.2d at 1091 ["the purpose of the homestead exemption laws is to protect the possession and enjoyment of the individual in property which is *used* as his or her home" (*emphasis added)*]; *Yates v. Home Bldg. & Loan Co*., 103 S.W.2d 1081, 1084-85 (Tex. Civ. App. — Beaumont 1937, no writ) ["Homestead rights in a house cannot be acquired by mere intention, but to effectuate the intent actual use of the property as a home must concur."].

[7] Notwithstanding the belief of Debtors' counsel, the filing of a voluntary petition for relief under the Bankruptcy Code is not the type of conduct which would constitute an overt act sufficient to carry the day for the Debtors in this case.

conclusions of law[8] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 10/4/2005

*[signature: Bill Parker]*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[8] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.